Hillsborough
No. 6493

### CITY OF MANCHESTER

v.

### FRANCIS HUARD
AND
### ROBERT M. DUVALL, COMMISSIONER OF LABOR

February 28, 1973

*J. Francis Roche,* city solicitor, by brief and orally, for the plaintiff.

*James M. Winston,* by brief and orally, for the defendant.

GRIMES, J. The issue presented by this workmen's compensation case is whether injuries received by a uniformed Manchester policeman while arresting a person for drunkenness during the policeman's off-duty job at a private restaurant called Mrs. Bea's arose out of and in the course of his employment with the city.

The labor commissioner ruled that Francis Huard, a regular Manchester police officer, was entitled to workmen's compensation benefits from the city of Manchester. The city appealed and received a hearing de novo before the superior court. RSA 281:37 I (Supp. 1972). The trial court found for Huard and in a subsequent hearing denied the city's motion to set aside the verdict. All exceptions were reserved and transferred by *Perkins,* J.

Officer Huard, a regular Manchester policeman, volunteered to fill in for another officer on an off-duty assignment as a guard at Mrs. Bea's restaurant on March 20, 1971. The restaurant cook instructed him on the area he was to guard. While performing this function, the officer arrested a restaurant patron for drunkeness, whereupon six other patrons assaulted and seriously injured him. Officers performing extra duty of this nature wear their full uniform and equipment as did Officer Huard, except that he did not have his walkie-talkie radio because of a shortage of them.

Assaults caused by or resulting from working conditions or the conditions and obligations of employment are compensable under the statutory language "arising out of and in the course of employment." RSA 281:2 V (Supp. 1972); *Newell v. Moreau,* 94 N.H. 439, 55 A.2d 476 (1947); *LaBonte v. National Gypsum Company,* 110 N.H. 314, 269 A.2d 634 (1970). The obligations of a policeman's employment, either as a regular policeman or as guard at a restaurant, encompass making arrests for drunkenness.

The issue is whether the officer was an employee of the city at the time of the injury under the then applicable statu-

tory language, "Employee, with respect to public employment, means every person in the service of the state, . . . or of any political subdivision . . . thereof, . . ., under any contract of hire, express or implied, and every official or officer thereof, whether elected or appointed, while performing his official duties." Laws 1967, 403:1, *as amended,* RSA 281:2 IV (Supp. 1972).

The city argues that when the officer took the special employment with Mrs. Bea's, he became an employee solely of this new special employer. The officer contends that the peace-preserving nature of his employment with Mrs. Bea's still constituted part of his general employment with the city. Huard was an employee of the city for the purposes of workmen's compensation liability if (1) there was a contract for hire with the city, (2) the work he was doing was of the nature he was employed to do for the city, and (3) the city had a right to control the details of the work. 1A Larson, The Law of Workmen's Compensation § 48.00 (1967).

In this case, there is no question but that Huard was a regular police officer hired by the city. In making an arrest, he was performing the functions and duties of a police officer. *Mathurin v. Putnam,* 136 Conn. 361, 71 A.2d 599 (1950). His action related as much to preserving the general public safety as it did to the benefit of Mrs. Bea's. The city had a sufficient continuing interest in what he was doing to make it liable for the injuries he received while he was doing it. 1A Larson, *supra* § 48.22. The city had a duty to preserve order and the use of police officers for off-duty jobs such as this merely shifted the financial burden to others.

The fact that the officer was paid by Mrs. Bea's and was instructed on the area to guard does not preclude Huard from being an employee of the city. In carrying out the special assignment Huard was still governed by police regulations and the evidence shows that police superiors checked on off-duty officers and disciplined them for poor performance. It appears that the procedures used in making the arrest in this case conformed to those used by officers on regular duty rather than those followed by private guards. The evidence warrants a finding that the details of Huard's work at Mrs. Bea's were under the supervision and direction of

84

the police department so as to bring him within the city's employ at the time of the injury. *Cf. Bisson v. Winnipesaukee Air Service, Inc.*, 91 N.H. 73, 13 A.2d 821 (1940); *Currier v. Abbott*, 104 N.H. 299, 185 A.2d 263 (1962). Huard was where he was and doing what he was doing only because he was a police officer. *Henderson v. Sherwood Motor Hotel Inc.*, 105 N.H. 443, 201 A.2d 891 (1964).

The finding of the trial court must stand since it could be reasonably made from the evidence. *Walter v. Hagianis*, 97 N.H. 314, 87 A.2d 154 (1952); *Jackson v. Emile J. Legere, Inc.*, 110 N.H. 252, 265 A.2d 18 (1970).

*Exceptions overruled.*

All concurred.