United States District Court
for the District of New Hampshire
No. 7188

GILLES BILODEAU & a.

v.

OLIVER STORES, INC. & a.

February 27, 1976

*Wadleigh, Starr, Peters, Dunn & Kohls* and *James C. Wheat (Mr. Charles J. Dunn* orally) for Gilles and Giselle Bilodeau.

*Sulloway, Hollis, Godfrey & Soden* and *Martin L. Gross* and *Michael M. Ransmeier (Mr. Gross* orally) for Liberty Mutual Insurance Company, intervenor.

Oliver Stores, Inc., and Franklin Equipment Company, defendants, filed no brief.

LAMPRON, J.   Upon motion of the plaintiffs and on its own motion, the United States District Court *(Bownes,* J.) on an agreed statement of facts certified to this court under our rule 20 (RSA 490 App. R. 20 (Supp. 1975)) the following questions of law:

"A. Whether following a settlement in an action brought by plaintiff-employee pursuant to N.H. RSA 281:14 for permanent and apparently totally disabling injuries received while at work, the compensation carrier has a continuing obligation to pay compensation benefits for a total disability pursuant to N.H. RSA 281:23.

"B. Whether following a settlement in an action brought by plaintiff-employee pursuant to N.H. RSA 281:14 for permanent and apparently totally disabling injuries received while at work, the compensation carrier has a continuing obligation to pay medical, hospital, and remedial care for so long as required pursuant to N.H. RSA 281:21.

"C. If the answer to either or both of the above questions is in the affirmative, does the compensation carrier have a lien on the net proceeds of the employee's settlement against which it may set off any future payments until such time as the weekly disability benefits and the amount of medical and hospital expense which would otherwise be payable exceed the amount of the employee's net settlement."

It is agreed that on June 15, 1971, plaintiff Gilles Bilodeau, then aged 26, a citizen of Lambton, Quebec, was operating in Errol a so-called skidder for his employer Ronald LaPointe. This machine was manufactured by defendant Franklin Equipment Company and had been sold to LaPointe by defendant Oliver Stores. During the operation, the skidder overturned causing plaintiff to be thrown from the machine and onto the ground. The skidder rolled onto his waist and legs causing him severe physical injury resulting in permanent paraplegia. Liberty Mutual, LaPointe's workmen's compensation carrier, instituted suit in Bilodeau's name against Franklin and Oliver pursuant to RSA 281:14 I.

After extensive medical and hospital treatment plaintiff was last discharged from University Hospital in Boston, Massachusetts, on March 9, 1973, and presently resides in his home in Lambton and is confined to a wheel-chair. He has been unable to find work in that area. He is now 30 years old, married, and the father of a four year old son. At the time of the accident he was earning approximately $10,000 to $11,000 annually as a skidder operator and log cutter, which has been his line of work, except for some farming for a short period.

After three full days of trial, the case was settled for $410,000. Plaintiff Gilles received $360,000 and his wife $50,000 for her claim for loss of consortium. Liberty has paid all medical and hospital expenses incurred to date and has paid Gilles $67 in weekly disability payments. The total payments to date amount to slightly in excess of $73,000.

The parties correctly agree that Liberty Mutual as compensation carrier for the employer has a continuing obligation to pay compensation benefits under RSA 281:23 (Supp. 1975) for plaintiff Gilles Bilodeau's total disability. It is equally true, and the parties agree, that under RSA 281:21 (Supp. 1975) Liberty has a continuing obligation to pay medical, hospital and remedial care as long as required by the plaintiff's condition as a result of this accident. Consequently the answers to certified questions "A" and "B" are "Yes" the carrier will be under those two continuing obligations "following a settlement in an action brought by plaintiff-employee pursuant to N.H. RSA 281:14" (Liability of Third Person). The only question to be considered further is certified question "C". Even as to it, the parties are in agreement that RSA 281:14 I creates a lien against the "amount of damages recovered by the employee [from a third party tort-feasor] less the expenses and costs of action, to the extent of the compensation, medical, hospital or other re-

medial care already paid," at the time of the settlement. However, the intervenor Liberty Mutual claims in its brief that "[w]hile there is no express provision made for the case where there may be some future liability for compensation payments by the insurance carrier, such a provision is necessarily implicit in the purpose of the lien structure of the law." Plaintiff, on the contrary, maintains that no such lien as to future obligations can be fairly inferred from the language of RSA ch. 281 generally or the language of its section 14 in particular.

RSA 281:14 I reads in part as follows: "When an injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in some person other than the employer ... a legal liability to pay damages in respect thereto, the injured employee, in addition to the benefits of this chapter, may obtain damages from or proceed at law against such other person to recover damages; provided, however, that the employer, or the employer's insurance carrier, shall have a lien on the amount of damages recovered by the employee, less the expenses and costs of action, to the extent of the compensation, medical, hospital or other remedial care already paid, or agreed or awarded to be paid by the employer, or the employer's insurance carrier, under this chapter less the employer's or ... carrier's pro-rata share of expenses and costs of action as determined" by the labor commissioner or the superior court under RSA 281:14 IV.

RSA 281:14 III provides that no settlement of such claim or action shall be binding until approved by the labor commissioner or the court in which the action is pending. It further provides that if an employee or the administrator of his estate fails to proceed against the third party for a period of nine months after injury the employer or insurance carrier may so proceed and "shall be subrogated" to the rights of the injured employee or of the administrator. Liberty Mutual, compensation carrier for LaPointe, plaintiff Bilodeau's employer, instituted the present suit on behalf of Bilodeau against the third party defendants.

A workmen's compensation law, remedial in character, is designed to substitute for unsatisfactory common law remedies in tort a liability without fault with limited compensation capable of ready and early determination. *Hartford Accident & Indem. Co. v. Duvall,* 113 N.H. 28, 31, 300 A.2d 732, 734 (1973). It compensates only for injuries which produce disability which presumably affects earning power. *Archie v. Hampton,* 112 N.H. 13, 15, 287 A.2d 622, 624 (1972). Unlike tort actions, no damages or compensation are

awarded for pain and suffering, disfigurement as such, loss of consortium, and other elements of common law damages.

The rights and remedies under RSA ch. 281 are purely statutory. The nature and extent of compensation to the injured employee as well as the extent and manner by which a compensation payor can be reimbursed is governed by the express statutory language and that which can be fairly implied therefrom. *Hagerty v. Great American Ind. Co.*, 106 N.H. 425, 427, 213 A.2d 424, 425 (1965).

Third party actions were incorporated into our workmen's compensation law when Laws 1947, 266:12 was enacted, which is now RSA 281:14. Such actions are permitted based on the concept that the ultimate loss from wrongdoing should fall upon the wrongdoer and that the injured workman should be given an opportunity in such cases to obtain fair pecuniary compensation. 2 A. Larson, Workmen's Compensation Law § 71.10 (1975); *see Lamontagne v. Lamontagne*, 100 N.H. 237, 122 A.2d 920 (1956). The accompanying lien provision is based on another well-known principle of justice and equity that the injured workman should not be allowed to keep the entire amount of both his compensation award and his common law recovery which would amount to a double recovery. *Smith v. Am. Employers' Ins. Co.*, 102 N.H. 530, 535, 163 A.2d 564, 567 (1960).

"The obvious disposition of the matter is to give the employer [or his compensation carrier] so much of the negligence recovery as is necessary to reimburse him for his compensation outlay, and to give the employee the excess." 2 A. Larson, *supra* § 71.20; *see Spengler v. Employers & Ins. Co.*, 131 Ga. App. 443, 445-46, 206 S.E.2d 693, 696 (1974); *Richardson v. U.S.F.&G. Co.*, 233 Miss. 375, 381-82, 102 So. 2d 368, 370 (1958). In order to accomplish this result the lien created by RSA 281:14 I in favor of the employer or his carrier "to the extent of the compensation, medical, hospital or other remedial care already paid, or agreed or awarded to be paid" cannot be limited to payments made before the settlement of the third party action but must cover those to be made in the future.

To hold otherwise would make the date of a third party settlement determine the extent of the lien. It seems unlikely that the legislature intended to make the final distribution of the proceeds of a third party recovery or settlement hinge on such a fortuitous factor. Furthermore the interpretation adopted by this opinion is in accord with the principles which are the bases of third party actions. "[T]he employer, who, in a fault sense, is neutral, comes

out even; the third person pays exactly the damages he would normally pay, which is correct, since to reduce his burden because of the relation between the employer and employee would be a windfall to him which he has done nothing to deserve; and the employee gets a fuller reimbursement for actual damages sustained than is possible under the compensation system alone." 2 A. Larson, *supra* § 71.20; *Spengler v. Employers & Ins. Co.*, 131 Ga. App. 443, 445-46, 206 S.E.2d 693, 696 (1974); *Richard v. Arsenault*, 349 Mass. 521, 524, 209 N.E.2d 334, 336 (1965).

We have arrived at this conclusion after considering the two main arguments advanced by the plaintiff for a contrary interpretation. The first is that third party actions do not necessarily produce a double recovery. This is true he maintains especially where the employer is also negligent. Plaintiff argues that the third party in such suits emphasizes the role of the employer's negligence thus reducing the amount recovered by the employee. The third party action, whether brought by the employee or the employer, is the action of the employee claiming that his injuries resulted from that party's negligence. The sole issue is whether the third party's negligence was a cause of his injuries. The employer cannot be joined or sued by the third party as a tort-feasor as he cannot be liable to the employee in tort. *William H. Field Co., Inc. v. Nuroco Woodwork, Inc.*, 115 N.H. 632, 634-35, 348 A.2d 716, 718 (1975). Hence the employer's negligence is not an issue in the third party action. *Houk v. Arrow Drilling Co.*, 201 Kan. 81, 92, 439 P.2d 146, 154 (1968); *Vidrine v. Michigan Millers Mut. Ins. Co.*, 263 La. 300, 268 So. 2d 233, 244-45 (1972) (on rehearing); *Froysland v. Leef Bros., Inc.*, 197 N.W.2d 656, 659 (Minn. 1972); *Caulfield v. Elmhurst Constr. Co.*, 268 App. Div. 661, 664, 53 N.Y.S.2d 25, 28, *aff'd*, 294 N.Y. 803 (1945); *see* 2 A. Larson, Workmen's Compensation Law §§ 75.22 *et seq.* (1975). *See generally* Note, *Workmen's Compensation: Should A Contributorily Negligent Employer Be Subrogated*, 42 Ind. L.J. 430 (1967).

The plaintiff also relies on certain language in the case of *Hackman v. American Mutual Liability Insurance Company*, 110 N.H. 87, 92-93, 261 A.2d 433, 437 (1970). This court was interpreting an uninsured motorist endorsement which authorized the carrier to deduct from an award "the present value of all amounts payable on account of such bodily injury under any workmen's compensation law." In discussing an amount found by an arbitrator for estimated future medical care and lost wages the court used the following language: "Under RSA 281:14 a compensation carrier who col-

lected all benefits paid 'or agreed . . . to be paid' from damages recovered against a third party tort-feasor and then was required to pay further benefits would have to pay them without reimbursement since it had recovered all that the statute allowed." In our opinion, in the context used this statement is not contrary to the interpretation we have placed on RSA 281:14 I.

We hold that given the purpose of third party actions and the equitable considerations involved, the legislature intended to create a lien in favor of the employer or carrier for all disbursements for compensation, medical, hospital or remedial care already made at the time of the recovery from the third party, and all disbursements which they will be required to make in the future to meet their obligations under RSA ch. 281. Consequently the answer to certified question "C" is "Yes", the compensation carrier has "a lien on the net proceeds of the employee's settlement against which it may set off any future payments until such time as the weekly disability benefits and the amount of medical and hospital expenses which would otherwise be payable exceed the amount of the employee's net settlement." The procedures necessary to effectuate this result are subject to the approval of "the court in which such action is pending". RSA 281:14 III; *see* No. 7238, *Tarr, Adm'x v. Republic Corporation,* 116 N.H. 99, 352 A.2d 708 (1976), argued and considered with this case and decided this day.

*Remanded.*

All concurred.